UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MOHAMMED ABOULISSAN,

        Petitioner,

        -against-

UNITED STATES OF AMERICA

        Respondent.
--------------------------------------------------------X

NOT FOR PUBLICATION
MEMORANDUM & ORDER

03-CV-6214 (CBA)

AMON, United States District Judge:

     Mohammed Aboulissan petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Aboulissan's petition is granted.

**I.    Background**

     Aboulissan seeks to challenge a judgment of the district court convicting him, pursuant to his guilty plea, of mail fraud in violation of 18 U.S.C. § 1341. On April 20, 2001, the district judge then assigned to the case sentenced Aboulissan to a prison term of 24 months, which was discharged on January 30, 2003, a three-year term of supervised release, which was discharged on February 19, 2006, and a $100 special assessment. In his petition, Aboulissan claims that Charles H. Hochbaum, Esq., his former lawyer, was ineffective for failing to file a timely notice of appeal, and that his plea allocution was inadequate.

     Judgment was entered against Aboulissan on April 23, 2001. A notice of appeal was not filed within ten days, and Aboulissan's conviction became final on May 8, 2001. However, Aboulissan claims that he requested that his attorney file a notice of appeal, and that he did not realize an appeal had not been filed until November 21, 2001.    Two months later, on January 31, 2002, Aboulissan filed a *pro se* "Motion to Enter Appeal 'Nunc Pro Tunc'." (Motion to Enter Appeal "Nunc Pro Tunc", United States v. Aboulissan, No. 00-CR-433 (E.D.N.Y. Jan. 31,

2002) (hereinafter "Nunc Pro Tunc Motion").) The court denied that motion in an order dated February 8, 2002, explaining that the time to appeal Aboulissan's conviction and sentence had passed.[1] United States v. Aboulissan, No. 00-CR-433 (E.D.N.Y. Feb. 8, 2002).

On February 20, 2002, Aboulissan filed an appeal of that order with the Court of Appeals for the Second Circuit. That document was returned to the Eastern District of New York, in accordance with Rule 4(d) of the Federal Rules of Appellate Procedure, and was docketed as a Notice of Appeal by this Court. The Court of Appeals issued a scheduling order, directing that trial counsel file a brief in the underlying case. On August 6, 2002, Mr. Hochbaum moved, *inter alia*, to be relieved as counsel. (See Motion to be Relieved as Counsel, attached as Exh. J to Resp. Br.) On August 7, 2002, the Court of Appeals granted the motion to relieve Mr. Hochbaum and new counsel, Robin C. Smith, was appointed.

On August 20, 2002, the government moved to dismiss the appeal pursuant to the terms of the appeal waiver provision of Aboulissan's plea agreement. (See Motion to Dismiss Appeal, United States v. Aboulissan, No. 02-1156 (2d Cir. Aug. 20, 2002), attached as Exh. K to Resp. Br.) On January 8, 2003, the Court of Appeals dismissed the appeal, ruling that the notice of appeal was filed in an untimely fashion, and that it had no authority to enlarge the time for filing a notice of appeal. United States v. Aboulissan, No. 02-1156 (2d Cir. Jan. 8, 2003).

On March 19, 2003, Aboulissan's new attorney, Robin C. Smith, made a motion before the district court to be assigned as counsel in connection with an anticipated motion to reargue

---

[1] Rule 4(b) allows a defendant to file a late notice of appeal. However, he must do so within thirty days of the expiration of the time to appeal and must show excusable neglect. United States v. Batista, 22 F.3d 492, 493 (2d Cir. 1994).

2

the denial of the *pro se* "Motion to Enter Appeal 'Nunc Pro Tunc'" and an anticipated motion under 28 U.S.C. § 2255, in which Aboulissan would claim that his plea of not guilty was involuntarily and that the factual basis for the plea was not elicited. (Motion for Appointment of Counsel, United States v. Aboulissan, No. 00-CR-433 (E.D.N.Y. Mar. 19, 2003).) On March 24, 2003, the district court denied that motion. The court found that Aboulissan had not filed an affidavit of indigency and that any petition that he contemplated filing pursuant to section 2255 would not be granted because (1) when Aboulissan pled guilty on May 12, 2000, he swore under oath that the answers to the questions asked by the Court would be true; (2) a transcript of the May 12, 2000 proceedings reflected that he understood the nature and purpose of that proceeding and pled guilty voluntarily and that there was a factual basis for his plea; (3) his plea agreement provided that he waived his right to appeal and to otherwise challenge his conviction or sentence which would not be in excess of 27 months and he stated that he understood that portion of his plea agreement; (4) any petition pursuant to 28 U.S.C. § 2255 would be time-barred. United States v. Aboulissan, No. 00-CR-433 (E.D.N.Y. Mar. 24, 2003).

On April 3, 2003, Aboulissan filed a notice of appeal from the March 24, 2003 order. That appeal was dismissed by the Court of Appeals in a summary order dated November 3, 2003 in which the Court of Appeals ruled that it "lack[ed] jurisdiction over Aboulissan's appeal because his notice of appeal was untimely." United States v. Aboulissan, No. 03-1216 (2d Cir. Nov. 3, 2003). Finally, on November 6, 2003, Aboulissan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, asserting, *inter alia*, that his counsel was ineffective for failing to timely file a notice of appeal, as allegedly requested by Aboulissan. (Motion under 28 U.S.C. § 2255 to Vacate, Correct, or Set Aside Sentence/Motion to Enter Appeal "Nunc Pro

Tunc", Aboulissan v. United States, No. 03-CV-6214 (E.D.N.Y. Nov. 6, 2003) (hereinafter "Habeas Petition").) While reserving decision on the issue of whether Aboulissan's habeas petition was timely, this Court held a hearing on June 2, 2006, continued on June 15, 2006, on the issue of whether Aboulissan had requested that his attorney file an appeal.

## II. Discussion

### A. Timeliness

The first question before this Court is whether the instant petition for habeas relief was timely filed. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a "1-year period of limitation shall apply to a motion" under 28 U.S.C. § 2255. That one-year period of limitations runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Aboulissan's judgment of conviction became final on May 8, 2001. The Court entered judgment on April 23, 2001. Excluding weekends, Aboulissan had ten days, or until May 7, 2001, to file his notice of appeal. See Fed. R. App. P. 4(b). Because no direct appeal was taken, the judgment of conviction became final on May 8, 2001, the day after the time to appeal

4

expired.² See Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000) (citing Fed. R. App. P. 4(b)); see also Sulaiman v. United States, 2002 WL 519718, No. 00-CV-6867, at *1 (E.D.N.Y. Apr. 2, 2005).

Aboulissan asserts that because he did not discover that his attorney had not filed a notice of appeal until November 21, 2001, the statute of limitations did not begin to run until that date. See 28 U.S.C. § 2255(4) ("A 1-year period of limitation . . . shall run from the latest of . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."). Regardless of the date from which the statute of limitations began to run, however, Aboulissan did not file the instant petition until November 6, 2003, two and a half years after his conviction became final, and almost two years after he discovered that his attorney had not filed a notice of appeal. Aboulissan argues that his "Motion to Enter Appeal 'Nunc Pro Tunc'", which was filed on January 31, 2002, less than a year after his conviction became final, should have been construed as a petition for habeas corpus.

"It is well settled that *pro se* litigants generally are entitled to a liberal construction of

---

² Aboulissan argues that he did in fact appeal his conviction, by filing a late notice of appeal on January 31, 2002, and by appealing the denial of that late notice of appeal to the Second Circuit on February 20, 2002. However, Aboulissan's conviction "became final . . . the day after his time to appeal expired." Wims, 225 F.3d 186, 188 (2d Cir. 2000). Furthermore, "the filing of a motion to extend the time to appeal or to file a late notice of appeal does not 'restart' the AEDPA limitation period." Bethea v. Girdich, 293 F.3d 577, 579 (2d Cir. 2002); see also Raynor v. Dufrain, 28 F. Supp. 2d 896, 898 (S.D.N.Y. 1998) ("Leave to file a late notice of appeal can be sought at any time . . . . If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief."). That is, Aboulissan may not avoid the AEDPA one-year statute of limitations by filing a late notice of appeal and appealing the denial of that late notice of appeal.

5

their pleadings, which should be read 'to raise the strongest arguments that they suggest.'"
Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d
75, 79 (2d Cir. 1996)); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (noting that the
allegations in a *pro se* complaint are "h[e]ld to less stringent standards than formal pleadings
drafted by lawyers"). A district court must review *pro se* petitions "with a lenient eye, allowing
borderline cases to proceed." Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (quoting
Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983); see also United States v.
Ben-Shimon, 249 F.3d 98, 103-04 (2d Cir. 2001) (general objection of *pro se* defendant at
sentencing should have been construed liberally for preservation purposes). This rule applies
equally to *pro se* motions filed pursuant to section 2255. Green, 260 F.3d at 83. Thus, "[w]here
a motion, nominally seeking an extension of time [in which to file a petition for habeas corpus],
contains allegations sufficient to support a claim under section 2255, a district court is
empowered, and in some instances may be *required*, under Haines to treat that motion as a
substantive motion for relief under section 2255." Id. (emphasis added); see also Cook v. New
York State Division of Parole, 321 F.3d 274, 277-78 (2d Cir. 1997) ("If an application that
should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the
district court must treat is as a section 2254 application instead. 'It is the substance of the
petition, rather than its form, that' governs.") (quoting James v. Walsh, 308 F.3d 162, 166 (2d
Cir. 2002)).

In this case, Aboulissan filed a *pro se* "Motion to Enter Appeal 'Nunc Pro Tunc'."
Although Aboulissan did not refer to section 2255 in that motion, it contains allegations
sufficient to support a claim under section 2255. In particular, in requesting that the court "enter

6

a Notice of Appeal on his behalf," Aboulissan asserted that he had requested that his attorney file a notice of appeal, that his attorney had failed to do so, and that such action constituted "ineffectiveness of counsel." (Nunc Pro Tunc Motion at 4.) Quoting Peguero v. United States, 526 U.S. 23 (1999), which addressed the availability of relief under section 2255, Aboulissan stated that "[w]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." Id. See also Rodriquez v. United States, 395 U.S. 327, 329 (1969).

Thus, although Aboulissan referred to his motion as a "Motion to Enter Appeal 'Nunc Pro Tunc'," and did not specifically reference a petition for habeas corpus under section 2255, Aboulissan's motion relied on section 2255 case law and contained allegations sufficient to state a claim for section 2255 relief, namely ineffective assistance of counsel for failure to file a requested appeal. In addition, the relief sought by Aboulissan, the right to enter a Notice of Appeal, is consistent with the relief granted for a successful section 2255 petition asserting failure of counsel to file a requested appeal. See Campusano v. United States, 442 F.3d 770, 777 (2d Cir. 2006) (If petitioner did "in fact instruct[] his attorney to file an appeal . . . he is to be allowed a direct appeal.") Accordingly, this Court construes Aboulissan's January 31, 2002 "Motion to Enter Appeal 'Nunc Pro Tunc'" as a petition for habeas corpus pursuant to section 2255. As that motion was filed less than a year after Aboulissan's conviction became final, and less than a year after he discovered no notice of appeal had been filed, it is timely under the AEDPA.[3]

---

[3] The Court notes that Aboulissan's January 31, 2002 motion does not reference his argument that his plea allocution was inadequate, which argument forms a second basis for his petition for habeas corpus, and which argument will form the basis of Aboulissan's direct appeal.

7

B.     **Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees "the right to the effective assistance of counsel." In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his lawyer's representation "fell below an objective standard of reasonableness," and that he was prejudiced by his lawyer's deficient performance. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez, 395 U.S. at 327). Where counsel's error leads to "the forfeiture of a proceeding itself," prejudice will be presumed. Id. at 483-84. That is, "[w]hen counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." Id. (internal quotations and alterations omitted).

Furthermore, the Second Circuit has held that the right to have counsel file a notice of appeal extends to situations in which the client waived his right to appeal. Campusano, 442 F.3d at 771-72. Thus, even when a defendant has waived his right to appeal by entering a guilty plea, counsel must file a notice of appeal upon the defendant's request. The remedy for counsel's failure to file an appeal is for the Court to grant the defendant the right to file a notice of appeal. Id. at 775.

---

That argument was not raised until the March 19, 2003 motion to appoint counsel, more than a year after Aboulissan discovered that his attorney had not filed a notice of appeal. Furthermore, as explained *infra*, Aboulissan will be granted an opportunity to file a direct appeal with the Second Circuit, which is the Court which should hear this argument in the first instance. Accordingly, this Court declines, at this time, to address Aboulissan's argument that his plea allocution was inadequate.

8

In the instant case, Aboulissan claims that he requested that his attorney, Mr. Hochbaum, file a notice of appeal. At a hearing held before this Court, Mr. Hochbaum did not refute Aboulissan's claim. Aboulissan testified that Mr. Hochbaum "guarantee[d]" him that he would not serve any jail time. (Tr. of Hearing dated June 2, 2006 (hereinafter "Tr. 6/2/06") at 47.) Aboulissan testified that two or three days after his April 20, 2001 sentencing, he reminded Mr. Hochbaum of his guarantee and asked Mr. Hochbaum "what will you do now?" and that Mr. Hochbaum told Aboulissan that they would appeal. (Tr. 6/2/06 at 52-53.) Aboulissan's daughter, Amtissal, testified that on the date of sentencing, the family told Mr. Hochbaum that they wanted to appeal. (Tr. of Hearing dated June 15, 2006 (hereinafter "Tr. 6/15/06") at 58.)

In addition, Aboulissan testified that he spoke with Mr. Hochbaum three times by telephone and that Mr. Hochbaum assured him that his work on the appeal was progressing, but that Mr. Hochbaum stopped returning phone calls after June, 2001. Aboulissan also testified that he asked his daughters Nazeha and Amtissal, and an employee, Josette Stokes, to call Mr. Hochbaum and follow up on the progress of his appeal (Tr. 6/2/06 at 61-62.) Ms. Stokes testified that she called Mr. Hochbaum to find out the status of Mr. Aboulissan's appeal, and that Mr. Hochbaum assured Ms. Stokes that he was working on the appeal. (Tr. 6/15/06 at 36.) Amtissal Aboulissan testified that she spoke with Mr. Hochbaum twice about the appeal and that on both occasions, he stated that the appeal was going forward. (Tr. 6/15/06 at 61-62.) Nazeha Aboulissan also testified that she spoke with Mr. Hochbaum twice about her father's appeal. (Tr. 6/15/06 at 81-82.)

In his initial affidavit to this Court, Mr. Hochbaum unequivocally denied Aboulissan's claim, stating that Aboulissan never requested that he file an appeal. In particular, paragraph 5

of the affidavit reads as follows:

> After Aboulissan was sentenced I continued to discuss this matter with him and his family. At no time did I indicate to Aboulissan that I would appeal this matter. Nor did Aboulissan indicate to me that he wanted to file an appeal. The services I rendered after his sentence consisted of conversations with AUSA Daniel Alonso relating to Aboulissan's desire to provide the government with information which might result in a motion for a new sentence pursuant to Rule 35."

(Hochbaum Aff., Exh. 19 ¶ 5.)

However, Mr. Hochbaum retreated from this position in his testimony before this Court, at least insofar as the question of whether he was asked to file an appeal. Mr. Hochbaum testified that he did not have a clear recollection of whether Aboullisan asked him to file an appeal, that Mr. Aboulissan may have asked him to file an appeal, and that he may have informed Mr. Aboulissan that an appeal was not possible because it had been waived. Mr. Hochbaum's testimony reads as follows:

| | |
|---|---|
| WITNESS: | . . . [P]aragraph five contains a conclusion of mine that may not accurately reflect what my client wanted." |
| THE COURT: | What conclusion are you talking about? You say, nor did Mr. Aboulissan indicate to me that he wanted to file an appeal. |
| THE WITNESS: | I think the conclusion that I would come to is that he never said he wanted to file an appeal, but he certainly indicated that he was unhappy with the way the case had gone and discussed what could be done about it. |
| THE COURT: | Do you remember that discussion entailing him saying to you can I file and appeal or something along those lines? |
| THE WITNESS: | I don't have any specific recollection. I know that we discussed the issue of the appeal, and the fact that it had been waived. We had discussion beforehand and that my conversations with him related to what I perceived at that time was the only way to impact the sentence that had been imposed was to continue trying to press the prosecutor to allow him to cooperate for the purposes of rule 35. |

10

| | |
|---|---|
| THE COURT: | Do you recall any specific direction of Mr. Aboulissan to you to file an appeal? |
| THE WITNESS: | I don't recall such a specific direction, but that's not to say that he didn't say that, and I didn't say you can't because you waived it. Certainly today I would have filed a notice of appeal. |
| THE COURT: | Do you stand by the sentence ahead of that: At no time did I indicate to him that I would file an appeal; is that sentence correct? |
| THE WITNESS: | I believe so. . . . Certainly, I believe that if I had told him I would have filed an appeal I would have filed the appeal, but I believe our discussions related to my understanding and belief that he had no appellate rights. |

(Tr. 6/2/06 at 27-28.) Thus, Mr. Hochbaum's testimony does not contradict that of Aboulissan, his daughters, and Ms. Stokes that he was asked to file an appeal. Although the government has pointed to various inconsistencies in the testimony of Aboulissan's witnesses, the government has not presented any other evidence which would tend to contradict Aboulissan's basic assertion that he requested an appeal be filed. Accordingly, this Court concludes that Aboulissan requested that Mr. Hochbaum file an appeal.

The remedy for counsel's failure to file an appeal that has been requested by the defendant is for the Court to grant the defendant the right to file a notice of appeal. Campusano, 442 F.3d at 775. The Second Circuit has instructed that, in order to do so, the petitioner's sentence must be vacated, and the district court shall either "enter a new judgment imposing the same sentence in open court with defense counsel present, . . . [or] if the district court discerns any useful purpose in further considering the sentence, resentence the defendant." Garcia v. United States, 278 F.3d 134, 138 (2d Cir. 2002). This Court does not see any useful purpose in further considering Aboulissan's sentence, nor has Aboulissan proffered any such reason.

Accordingly, for the reasons set forth above, this Court will schedule a re-sentencing in

this case on February 28, 2008 at 2:00pm at which time the Court will enter a new judgment imposing the same sentence in open court. Aboulissan will have ten days from that date in which to file a Notice of Appeal.

       SO ORDERED.

Dated: Brooklyn, New York                                                Carol Bagley Amon
       February 13, 2008                                                   United States District Judge